IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARCIA K. DENISON,                          07-CV-1586-BR

       Plaintiff,

                                    OPINION AND ORDER

v.

MARVIN BROWN, KENT GREWE, and
MARTIN NYGAARD as individual
persons,

       Defendants.


**MARCIA K. DENISON**
P.O. Box 1463
Rainer, OR 97048
(503) 556-4012

       Plaintiff, *Pro Se*

**HARDY MYERS**
Oregon Attorney General
**SETH T. KARPINSKI**
**JESSE B. DAVIS**
Assistant Oregon Attorneys General
1162 Court Street, N.E.
Salem, OR 97301
(503) 378-6313

       Attorneys for Defendant Marvin Brown


1 - OPINION AND ORDER

**BLAIR J. HENNINGSGAARD**
P.O. Box 1030
Astoria, OR 97103
(503) 325-0151

Attorney for Defendants Kent Grewe and Martin Nygaard

**BROWN, Judge.**

This matter comes before the Court on the Motion of Defendant Marvin Brown to Dismiss Amended Complaint (#8) and Plaintiff Marcia K. Denison's Motion to Amend Amended Complaint (#13). For the reasons that follow, the Court **GRANTS** Brown's Motion to Dismiss and **DENIES** Denison's Motion to Amend Amended Complaint.

## BACKGROUND

The following facts are taken from Plaintiff Marcia K. Denison's Amended Complaint and the records before the Court in *Denison v. Brown*, 07-CV-905-BR (*Denison I*), including: the opinions of the Office of Administrative Hearings for the State of Oregon for the Oregon Department of Forestry and the opinion of the Oregon Court of Appeals.

On April 22, 1998, the Oregon Department of Forestry (ODF) executed a proposed land-exchange agreement with Defendants Kent Grewe and Martin Nygaard. ODF held public hearings regarding the proposed exchange on April 17 and May 20, 2002. On September 4, 2002, the Board of Forestry (BOF) approved the exchange. A

number of private citizens, including Denison, requested a
hearing on the matter in September 2002.  An Administrative Law
Judge (ALJ) held the hearing on May 27-30, 2003, and a number of
individuals, including Denison, attended.

On August 18, 2003, the ALJ issued an order in which he
ruled in favor of the land exchange except on the issue whether
the BOF had complied with an Oregon Administrative Rule (OAR)
that requires a finding of "extraordinary circumstances" when
monetary compensation exceeds 25% of the appraised value of the
acquired property.

 A number of petitioners, including Denison, filed
exceptions to the ALJ's order.  The ODF modified the land
exchange to comply with the ALJ's order and again brought the
proposed land exchange before the BOF on October 24, 2003.  On
January 29, 2004, the BOF heard oral argument and testimony from
a number of individuals, including Denison, and approved the
modified exchange.

On August 23, 2004, Defendant Brown issued a final order in
his capacity as the Oregon State Forester in which he addressed
the following contested issues:

> (1)  Whether the Exchange complies with OAR
> 629-033-0045(1)[,] which requires the value
> received by the Department in an acquisition or
> exchange shall not equal less than the value of
> the property transferred.
>
> (2)  Whether this exchange complies with OAR
> 629-033-0045(2), which requires a biological

assessment of plant and wildlife resources on the parcels and a recreational resource assessment of the parcels for the purpose of determining if the transaction furthers the purposes of OAR 629-033-0010 and the goals and objectives of the Forest Management Plans. The assessment of biological and wildlife resources on the parcels shall be conducted by a qualified independent third party.

(3)  Whether the exchange complies with applicable Forest Management Plans as required by OAR 629-033-0010(2), 629-033-0045(2), 629-035-0020 and 629-035-0030.

(4)  Whether this exchange complies with OAR 629-033-0010(1), which states that the exchange of forest lands is appropriate when the transaction furthers the purposes of ORS 530.010, the acquisition of lands chiefly for the production of forest crops, watershed protection and development, erosion control, grazing, recreation or forest administrative purposes.

(5)  Whether this Exchange complies with OAR 629-033-0010(2), which requires that the exchange furthers the objectives of providing a full range of social, economic and environmental benefits to the people of Oregon for achieving greatest permanent value as defined in OAR 629-035-0020 as expressed in approved forest management plans.

(6)  Whether the Exchange complies with OAR 629-033-0010(3), which requires that the transaction results in the consolidation of state forest lands, or makes management of state owned lands more economically feasible, as well as meeting OAR 629-033-0010(1)(2).

(7)  Whether the Exchange complies with OAR 629-0030(3), which requires that the public notice of an exchange include a legal description and common name where applicable, and where to obtain staff analysis of the transaction.

(8)  Whether the Exchange constitutes "take" of threatened and endangered species and/or their habitat.

(9) Whether the Exchange trades away parcels that provide current threatened and endangered species habitat, watershed protection, full-spectrum biodiversity, existing recreational trails and mature native forests, in return for parcels with young, monocultural tree farms, little biodiversity, little habitat for T & E species, degraded watersheds and no developed recreation areas, that are unnecessary to fulfill recreation, complex stand type & bio-diversity goals. The Exchange fails to consider; the future fate of current qualities of land to be traded; ODF's hill range of management options available; effects of likely management actions by the new private owners upon the parcels and surrounding landscape, and

(10) Whether the Exchange has had meaningful public review-the Department and the Board of Forestry have shown a poor course of conduct by not being responsive to public allegations of errors and misrepresentations.

Karpinski Decl., Ex. 1 at 2-3 (quotations omitted). Brown concluded the exchange (1) complied with the above noted OARs; (2) had meaningful public review; (3) did not constitute a taking of threatened or endangered species or their habitat; and (4) did not trade away parcels that provide current threatened or endangered species habitat, etc. He, therefore, approved the exchange.

The petitioners, including Denison, sought review of the BOF's decision and Brown's affirmance of that decision in the Oregon Court of Appeals. On December 13, 2006, the Oregon Court of Appeals issued an opinion affirming the BOF's decision and Brown's affirmance. On April 24, 2007, the Oregon Supreme Court denied the petitioners' request for review.

On June 19, 2007, Denison filed *Denison I* in this Court.  On
June 26, 2007, the Court issued an Opinion and Order in which it
dismissed Denison's Complaint for failure to comply with Federal
Rule of Civil Procedure 8 and allowed Denison to amend her
Complaint to comply with that Rule.

On July 16, 2007, Denison filed an Amended Complaint in
*Denison I* against Brown, a number of the members of the BOF in
their official capacities, and the BOF in which she sought
declaratory and injunctive relief on the grounds that the
Grewe/Nygaard land exchange violated the Administrative
Procedures Act (APA), 2 U.S.C. § 1403-1407; the Endangered
Species Act (ESA), 16 U.S.C.  § 1531-1544; the Clean Water Act
(CWA), 33 U.S.C. § 1251-1387; the Fifth, Ninth, and Fourteenth
Amendments to the United States Constitution; Article 1, Sections
1, 10, 20, and 33 of the Oregon Constitution; and the Federal
Land and Policy Management Act (FLMPA), 43 U.S.C. § 1716(e)(2).

On July 24, 2007, escrow closed on the land-exchange
property, and the deeds to those properties were recorded.

On August 24, 2007, before Defendants filed a response to
Denison's Amended Complaint in *Denison I*, Denison filed a Second
Amended Complaint in that matter against Brown, a number of the
members of the BOF, and S.J. Richardson in his official capacity
as an Oregon Court of Appeals Judge as well as Grewe and Nygaard
on the grounds that the Grewe/Nygaard land exchange violated the

APA; the ESA; the Northwest Oregon Forest Management Plan, 36
C.F.R. §§ 219.19 and 219.23; the Fifth, Ninth, and Fourteenth
Amendments to the United States Constitution; Article 1, Sections
1, 20, and 33 of the Oregon Constitution; FLMPA; the Security
Exchange Act, 15 U.S.C. § 78; and Oregon's Fraudulent Conveyances
Act, Or. Rev. Stat. § 95.130, *et seq.* Denison requested the
Court to: (1) rescind the exchange transaction and terminate the
exchanges as void, (2) rescind the transfer of the deeds,
(3) reverse the orders of Brown and the Oregon BOF and require
new appraisals of the land values, (4) require a survey of the
tracts to determine action regarding Northern Spotted Owls and
Marbled Murrelets, and (5) reverse the Oregon Court of Appeals
and BOF decisions.

On September 21, 2007, State Defendants filed a Motion to
Dismiss the Second Amended Complaint in *Denison I*. On
September 25, 2007, the Court entered an Order prohibiting the
parties from filing any further papers in that action other than
those approved by the Court until further order of the Court.

On October 23, 2007, Denison filed a second action in this
Court, 07-CV-1586-BR (*Denison II*) against Brown, Grewe, and
Nygaard in which she alleged the Grewe/Nygaard land exchange
violated the ESA.

On November 5, 2007, Denison filed an Amended Complaint in
*Denison II* against Brown, Grewe, and Nygaard in which she alleges

further facts to support her claim that the Grewe/Nygaard land transaction violated the ESA. Plaintiff seeks declaratory and injunctive relief, including a declaration that the Grewe/Nygaard land exchange is invalid "due to fraud" and recission of the land-exchange agreement.

On December 10, 2007, the Court issued an Opinion and Order in *Denison I* in which it granted Defendants' Motion to Dismiss on the grounds that (1) Defendant Richardson was judicially immune from Denison's claims in that action; (2) Denison's claims and requests for relief against the State Defendants in their official capacities for past alleged violations of federal statutes and regulations were barred by the Eleventh Amendment with the exception of those claims against the State Defendants in which Denison only sought prospective injunctive relief; (3) the Court lacked subject-matter jurisdiction over Denison's claims pursuant to the *Rooker-Feldman* doctrine to the extent Denison sought direct or indirect relief from the decision of the Oregon Court of Appeals; and (4) to the extent any of Denison's claims were not barred by either sovereign immunity or the *Rooker-Feldman* doctrine, they were barred by the doctrine of claim preclusion because they actually were litigated or could have been raised in the prior state proceedings. Because Denison was proceeding *pro se*, the Court granted her leave to amend her Second Amended Complaint to attempt to cure the deficiencies set

out in the Opinion and Order as to her claims against State Defendants in their official capacities. The Court also directed Denison to state separately any claim that she sought to pursue against Grewe and Nygaard to ensure those claims were not precluded by the state-court action.

On December 14, 2007, Brown filed a Motion to Dismiss in *Denison II* on the grounds that (1) the Court lacks subject-matter jurisdiction over Denison's claims against him pursuant to the sovereign immunity provided under the Eleventh Amendment of the United States Constitution, (2) the *Rooker-Feldman* doctrine prohibits the Court from reviewing the Oregon Court of Appeals decision, and (3) Denison's claims are barred by claim preclusion.

On December 27, 2007, Denison filed a Motion to Amend Amended Complaint seeking to remove Brown as a defendant and to add Tom Savage, District Forester for Astoria District of the State of Oregon Department of Forestry, as a defendant.

On February 4, 2008, Denison filed a Third Amended Complaint in *Denison I* against the BOF, Brown, a number of the members of the BOF, Richardson, Grewe, and Nygaard in which she alleged Richardson, Grewe, and Nygaard neglected their duties because they "misinterpreted laws and rules" and the Grewe/Nygaard land exchange violated the ESA; the Northwest Oregon Forest Management Plan, 36 C.F.R. §§ 219.19 and 219.23;

the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution; Article 1, Sections 1, 20, and 33 of the Oregon Constitution; and FLMPA. Denison requested the Court to (1) reverse the Oregon Court of Appeals and BOF decisions; (2) rescind the exchange transaction and terminate the exchanges as void; (3) require Defendants to "file for proceedings of eminent domain . . . to condemn [the exchanged properties] for public use, returning the property and all assets to the board of forestry to manage"; (4) order the BOF to follow all congressional acts, federal statutes, regulations, and standards "to clarify their duties"; and (5) temporarily enjoin all nonrecreational activities on "all original board of forestry exchange tracts herein pending final judgment."

On February 15, 2008, the Court issued an Opinion and Order dismissing *Denison I sua sponte* on the grounds that it did not cure the deficiencies indicated in the Court's December 10, 2007, Opinion and Order. On February 20, 2008, the Court entered a Judgment dismissing *Denison I* with prejudice.


## DEFENDANT BROWN'S MOTION TO DISMISS DENISON'S AMENDED COMPLAINT

Brown moves to dismiss Denison's Amended Complaint on the grounds that (1) the Court lacks subject-matter jurisdiction over Denison's claims against him pursuant to the sovereign immunity provided under the Eleventh Amendment of the United States

10 - OPINION AND ORDER

Constitution, (2) the *Rooker-Feldman* doctrine prohibits the Court from reviewing the Oregon Court of Appeals decision, and (3) all of Denison's claims are barred by claim preclusion.

## I.    Standards

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege enough facts so as to demonstrate a plausible entitlement to relief.  *Bell Atlantic v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 164-65 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65.  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the court accepts as true the allegations in the complaint and construes them in the plaintiff's favor.  *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).  "The Court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court, and may consider documents that are referred to in the complaint whose authenticity no party questions."  *Shwarz v. United States*, 234

F.3d 428, 435 (9th Cir. 2000)(citations omitted).  The Court's

reliance on judicially-noticed documents does not convert a

motion to dismiss into a summary judgment motion.  *Intri-Plex*,

499 F.3d at 1052.

When deciding a motion to dismiss for lack of subject-matter

jurisdiction under Rule 12(b)(1), the court may consider

affidavits and other evidence supporting or attacking the

complaint's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d

944, 956 (9th Cir. 2005).  When "the motion [to dismiss] is based

on written materials rather than an evidentiary hearing, [the

court] only inquire[s] into whether [the plaintiff's] pleadings

and affidavits make a *prima facie* showing of personal

jurisdiction."  *Holland America Line Inc. v. Wärtsilä North

America, Inc*., 485 F.3d 450, 457 n.5 (9th Cir. 2007).  Plaintiff

has the burden to establish that the court has subject-matter

jurisdiction.  *S.E.C. v. Internet Solutions for Business Inc*.,

509 F.3d 1161, 1164 (9th Cir. 2007).

When the plaintiff appears *pro se*, the court must "liberally

construe liberally" a *pro se* plaintiff's pleading.  *Allen v. Gold

Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).  Before

dismissing a *pro se* litigant's complaint, the court must give

the *pro se* litigant leave to amend his or her complaint unless it

is "absolutely clear that the deficiencies of the complaint

cannot be cured by amendment."  *Weilburg v. Shapiro*, 488 F.3d

1202, 1205 (9th Cir. 2007).  If a *pro se* litigant is given leave to amend the complaint, the court must set out the complaint's deficiencies to assist the litigant in avoiding repetition of his or her errors.  *Id.*

## II.  Sovereign Immunity bars Denison's claims in this action.

Brown contends Denison's claims against him are barred by sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides:  "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although the Eleventh Amendment does not bar actions against a state by its own citizens on its face, courts have consistently held an unconsenting state is immune from actions brought in federal courts by her own citizens as well as by citizens of another state.  *Mayweathers v. Newland* 314 F.3d 1062, 1069 (9th Cir. 2002).  *See also Bethel Native Corp. v. Dep't of Interior*, 208 F.3d 1171, 1173 (9th Cir. 2000) (same).

In addition, the Supreme Court has held actions against state officials acting in their official capacities are equivalent to actions against the state itself and, therefore, raise the same Eleventh Amendment concerns as actions against the

state.  *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007)

(citation omitted).

Despite the prohibitions of the Eleventh Amendment, the

Ninth Circuit has recognized

> [s]ince the Supreme Court's decision in *Ex parte*
> *Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714
> (1908), courts have recognized an exception to the
> Eleventh Amendment bar for suits for prospective
> declaratory and injunctive relief against state
> officers, sued in their official capacities, to
> enjoin an alleged ongoing violation of federal
> law. . . .  The *Young* doctrine strikes a delicate
> balance by ensuring on the one hand that states
> enjoy the sovereign immunity preserved for them by
> the Eleventh Amendment while, on the other hand,
> "giving recognition to the need to prevent
> violations of federal law."

*Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041,

1045 (9th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001).  The

*Young* exception applies to violations of federal statutory rights

as well as to violations of the United States Constitution.

*Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002)(citing

*Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997)).

Although the caption of the Amended Complaint reflects

Denison's intent to bring this action against Brown in his

individual capacity, all of the claims and allegations relate to

actions Brown took in his official capacity as Oregon State

Forester.  The Court, therefore, construes Denison's claims to be

against Brown in his official capacity.  Thus, pursuant to *Agua*

*Caliente Band of Cahuilla Indians*, the only exception to the

Eleventh Amendment provision of sovereign immunity are Denison's claims for prospective injunctive relief: (1) enjoining the "Luukenin tract" from land exchanges or timber sales and (2) designating and managing "Claremont" as a "Special Stewardship reserve." The Court, therefore, concludes the remainder of Denison's requests for injunctive relief are barred by the Eleventh Amendment.

## III. The *Rooker-Feldman* Doctrine relieves the Court of subject-matter jurisdiction over Denison's claims.

Even if Denison's claims against him were not barred by sovereign immunity pursuant to the Eleventh Amendment, Brown contends Denison's claims are barred by the *Rooker-Feldman* doctrine.

Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that, in effect, seek review of state-court judgments. *AmerisourceBergen Corp. v. Roden* 495 F.3d 1143, 1153 (9th Cir. 2007)(citing *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). The doctrine bars a federal court's direct review of issues actually decided by state courts as well as "claim[s] that 'amount[] to nothing more than an impermissible collateral attack on prior state court decisions'" and that are "inextricably intertwined with the with the forbidden appeal." *Ignacio v. Judges of U.S. Court of Appeals for Ninth Circuit*, 453 F.3d 1160, 1166 (9th Cir. 2006) (quoting *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995) and

citing *Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003)).

The *Rooker-Feldman* doctrine applies even when the challenge to the state-court decision involves federal constitutional issues, including those anchored in federally protected rights to due process and equal protection. *Bates v. Jones*, 131 F.3d 843, 856 (9th Cir. 1997)(citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986)).

*Rooker-Feldman* is a jurisdictional doctrine rather than a *res judicata* doctrine. *Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006). In *Robinson v. Ariyoshi*, the court, explained:

> the *res judicata* requirement of full and fair opportunity to litigate and the *Feldman* 'inextricably intertwined' barrier are two sides of the same coin. Under the rubric of either 'jurisdiction' or '*res judicata*,' the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible 'appeal' from the state court decision. If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court and to the federal court are so 'inextricably intertwined' that the federal court cannot take jurisdiction. Nor is it likely that there will have been a full enough and fair enough opportunity for litigation to warrant the claim preclusive effect of res judicata.

753 F.2d 1468, 1472 (9th Cir. 1985), *vacated on other grounds by* 477 U.S. 902 (1986).

Here although Denison does not explicitly request the Court to review the Oregon Court of Appeals decision affirming the land

exchange, Denison filed her action in this Court after the land exchange had been fully litigated through appeal in the state-court system, and in this action she requests recision of the land exchange which would, in essence, undo the decision of the Oregon Court of Appeals with respect to the land exchange.

In summary, the Court concludes the Denison's claims in this case are matters inextricably intertwined with the Oregon Court of Appeals decision in which the court affirmed the Grewe/Nygaard land exchange. Thus, Denison's unequivocal purpose in bringing this action is to undo the Oregon Court of Appeals decision and the *Rooker-Feldman* doctrine applies. The Court, therefore, concludes it lacks subject-matter jurisdiction over Denison's claims pursuant to the *Rooker-Feldman* doctrine.

Accordingly, the Court grants Brown's Motion to Dismiss Denison's claims to the extent Denison seeks direct or indirect relief from the decision of the Oregon Court of Appeals.

**V.    Claim Preclusion**

To the extent any of Denison's claims are not barred by either sovereign immunity or the *Rooker-Feldman* doctrine, Brown also asserts Denison's claims are barred by the doctrine of claim preclusion.

"Res judicata, or claim preclusion, 'bars any lawsuits on any claims that were raised or could have been raised in a prior action.'" *F.T.C. v. Garvey,* 383 F.3d 891, 897 (9th Cir. 2004)

(quoting *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1249 (9th Cir. 2004)). Claim preclusion has the effect of "foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003)(citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1 (1984)). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties." *Owens,* 244 F.3d at 713.

An identity of claims exists when the two actions "arise out of the same transactional nucleus of facts." *Id.* at 714. "'Privity' is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *F.T.C.,* 383 F.3d at 897 (quoting *Schimmels v. United States,* 127 F.3d 875, 881 (9th Cir. 1997)). Courts have found privity when there is a

> substantial identity between party and nonparty,
> . . . the nonparty had a significant interest and
> participated in the prior action, . . . the
> interests of the nonparty and party are so closely
> aligned as to be virtually representative, and
> when there is there is an express or implied legal
> relationship by which parties to the first suit
> are accountable to nonparties [in] a subsequent
> suit with identical issues.

*Schimmels,* 127 F.3d at 881 (internal quotations and citations

omitted).  "Privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *F.T.C.,* 383 F.3d at 897 (quotation omitted).  *See also Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998)("It is the identity of interest that controls in determining privity, not the nominal identity of the parties.") (quotation and citation omitted).

The decision of the Oregon Court of Appeals was a final judgment on the merits between Denison and the Oregon Department of Forestry, Grewe, and Nygaard.  Defendant Brown is a party in privity with the BOF because he is the Oregon State Forester and made the decision to approve the land exchange that was the subject of the Oregon Court of Appeals decision.  Finally, this action and the state-court action "arise out of the same transactional nucleus of facts"; *i.e.*, the land exchange and Denison's challenge to that exchange.

The Court, therefore, concludes all of Denison's claims in this matter could have been raised in the state proceedings or actually were litigated and, therefore, are barred by the doctrine of claim preclusion.

Accordingly, the Court also grants Brown's Motion to Dismiss on this basis.


## **DENISON'S MOTION TO AMEND AMENDED COMPLAINT**

Denison seeks to file a Second Amended Complaint withdraw her claims against Defendant Brown and to assert the same claims against Tom Savage, District Forester for Astoria District of the State of Oregon. Denison is proceeding *pro se* in this matter. As noted, before dismissing a *pro se* litigant's complaint, the court must give the *pro se* litigant leave to amend his or her complaint unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg*, 488 F.3d at 1205 .

Here Denison seeks to challenge the Grewe/Nygaard land exchange. The Court permitted Denison to amend her Complaints two times in *Denison I* to state a claim with respect to this exchange, and the Court has permitted Denison to amend her Complaint one time in this action. The Court concludes Denison's five attempts to state a viable claim between *Denison I* and *Denison II* are sufficient to satisfy the requirements of *Weilburg* and to establish that Denison cannot cure the deficiencies of her Amended Complaint in this action by filing her proposed Second Amended Complaint.

Accordingly, the Court denies Denison's Motion to Amend her Amended Complaint.


**<u>CONCLUSION</u>**


20 - OPINION AND ORDER

For these reasons, the Court **GRANTS** Defendant Brown's Motion to Dismiss Amended Complaint (#8), **DENIES** Denison's Motion to Amend Amended Complaint (#13), and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 24th day of March, 2008.

_____
ANNA J. BROWN
United States District Judge